UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Tony DeLoach, | ) | C/A No. 4:08-3113-HMH-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| South Carolina Department of Corrections; | ) | |
| Bernard McKie; | ) | |
| David Tartarsky; | ) | |
| Ms. Hill - I.G.C; | ) | |
| John and Jane Does, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Tony DeLoach, filed this action under 42 U.S.C. § 1983[1] on September 12, 2008, alleging violations of his constitutional rights. Plaintiff is currently incarcerated at Lee Correctional Institution. At all times relevant to the allegations in the complaint, plaintiff was housed at Kirkland Correctional Institution (KCI). Defendants filed a motion for summary judgment on February 10, 2009. (Doc. #31). Because plaintiff is proceeding pro se, he was advised on or about February 11, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response on April 9, 2009. (Doc. #40).

---

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges a constitutional violation due to the conditions of confinement while housed at KCI. Specifically, plaintiff asserts that his constitutional rights were violated when he was denied a new jumpsuit and hygiene package before being transferred from KCI. As a result of not being given a hygiene package before being transferred from KCI, plaintiff alleges that he had to do without one for thirty (30) days after arriving at LCI because LCI stated that KCI should have given him one before being transferred.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that

2

there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C.  CONDITIONS OF CONFINEMENT

As stated previously, the plaintiff complains that he was not given a new jumpsuit or a new hygiene packet before being transported from KCI to LCI causing him to be without a hygiene packet for thirty (30) days at LCI.

Defendants submitted the affidavit of Bernard McKie, Warden of KCI, who attests that an inmate on lock up status is issued a yellow jumpsuit to designate their custody status and are issued new and/or used jumpsuits when needed, e.g. after showering. McKie attests that an inmate on lock up status is transferred to another SCDC institution in the jumpsuit that they have been issued at KCI. An inmate on lock up status is issued hygiene items on an

"as needed" basis. Inmates on lock up status are not issued hygiene packets, but are given those items allowed pursuant to SCDC policy and those items needed. (McKie affidavit). The general population indigent inmates are given hygiene packets every thirty (30) days. Id. On April 4, 2007, it was reported that DeLoach repeatedly refused a clean jumpsuit and was placed on seventy-two (72) hour cell restriction and charged with threatening to inflict harm/assaulting an employee. On April 5, 2007, DeLoach was on lock up status and given a yellow jumpsuit. Id. On June 5, 2007, DeLoach was transferred from KCI to LCI and was not denied a jumpsuit at any time. Id. DeLoach was issued hygiene items on an "as needed" basis, based on his lock up status but was not denied hygiene items at KCI except as provided by SCDC policy. Id. McKie provided a copy of the incident report kept by the SCDC in the ordinary course of business.

Defendants also submitted the affidavit of Kimberly L. Hill, the Inmate Grievance Coordinator at Kirkland Reception and Evaluation Center, who attests that she is responsible for processing, investigating, and responding to all Step 1 level grievances by conducting an investigation into the facts alleged in the grievance, responding to the grievance after concluding the investigation, and turning it over to the Warden for approval. Hill attests that the grievances are either upheld or denied, and the inmate may appeal by filing a Step 2 grievance. Hill asserts that plaintiff filed a Step 1 grievance on June 8, 2007, complaining that he was denied a hygiene package and new uniform while being transferred from KCI to LCI. Hill attests that she conducted an investigation into the allegations including speaking with the Commissary Manager. Hill states that it was determined that inmates who transfer while on disciplinary detention status, or lock up status, do not receive uniforms or hygiene

4

packets prior to transfer. Hill attests that she submitted her findings to plaintiff's grievance to the Warden who denied DeLoach's grievance. (Hill affidavit, Doc. #31-4).

Eighth Amendment protection from cruel and unusual living conditions has both objective and subjective components. Conditions must rise to the level of a deprivation of a basic human need such as food, warmth, or exercise. Williams v. Griffin, 952 F.2d 820, 824 (4th Cir. 1991). In addition, prison officials cannot be held liable under the Eighth Amendment unless they knew of and disregarded an excessive risk to inmate health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Court of Appeals for the Fourth Circuit considered the case of Strickler v. Waters, 989 F.2d 1375 (4th Cir. 1993). The Court in Strickler said that an inmate complaining about prison conditions must show that the challenged conditions resulted in a serious deprivation of a basic human need which, in turn, resulted in serious or significant physical or mental harm. While any of these conditions standing alone may not constitute cruel and unusual punishment, they may constitute an Eighth Amendment violation if considered in aggregate, McElveen v. County of Prince William, 725 F.2d 954 (4th Cir.), cert. denied, 469 U.S. 819 (1984). However, to be considered in aggregate, conditions must have mutually enforcing effects that produce a deprivation of a single, identifiable need such as food, warmth, or exercise. Wilson v. Seiter, 501 U.S. 294 (1991). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Plaintiff has failed to show that he was deprived a "basic need." Strickler, supra Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from

5

challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381. The undersigned concludes that he has failed to produce any evidence of serious or significant physical or emotional injury resulting from his allegations. Accordingly, the undersigned recommends that summary judgment for the defendants be granted on these claims.

This Court is required to construe pro se complaints and petitions liberally. Such pro se complaints and petitions are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 9 (1980). A federal district court is charged with liberally construing a complaint or petition filed by a pro se litigant to allow the development of a potentially meritorious case. See Cruz v. Beto, 405 U.S. 319 (1972). When a federal court is evaluating a pro se complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. Fine v. City of New York, 529 F.2d 70, 74 (2d Cir. 1975). However, even under this less stringent standard, the complaint in the captioned case is subject to summary dismissal because plaintiff has failed to set forth a claim for which relief can be granted. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Dep't of Social Svcs., 901 F.2d 387 (4th Cir. 1990).

Additionally, the inmate must show more than de minimis pain or injury. Id. at 9. Although a plaintiff need not show a significant injury, the court in Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment

excessive force claim if his injury is de minimis." Plaintiff has failed to provide any evidence of an injury.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. The Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

Based on the above, it is recommended that defendants' motion for summary judgment be granted.

### D. QUALIFIED IMMUNITY

The defendants argue that they are entitled to a grant of qualified immunity under the facts as presented in the plaintiff's complaint.

The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether the defendant is protected by

this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." Wilson v. Layne, 526 U.S. 603, 609 (1999); *see also* Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." Wilson, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998).

In Maciariello v. Sumner, 973 F. 2d 295 (4th Cir. 1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity when it set forth that:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law.

8

> Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

Maciariello, 973 F. 2d 295, 298 (4th Cir. 1992) (Citations omitted).

For a plaintiff to recover, he must show the defendants (i) violated a particular right clearly established in law, and (ii) the application of that right to the actions of the official must be apparent. The plaintiff in this case has not done so. As stated above, plaintiff fails to show a violation of a clearly established right. Also, assuming, *arguendo*, a right has been violated, the undersigned cannot conclude that the defendants in this case "transgressed bright lines . . . officials are not liable for bad guesses in gray areas." Maciariello, supra. Therefore, the undersigned recommends that the motion for summary judgment filed by the defendants be granted on the basis of qualified immunity.

## E. ELEVENTH AMENDMENT IMMUNITY

The defendants contend that the plaintiff's §1983 claims against them for money damages are barred pursuant to their Eleventh Amendment Immunity.

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of Will v. Michigan Department of State Police, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between § 1983 and the Eleventh Amendment of the Constitution and stated:

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity (cites omitted) or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, supra at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself, and therefore, against the state. State officials may only be sued in their individual capacities.

There is no dispute that defendants in their official capacities are employees of the SCDC and, therefore, are entitled to Eleventh Amendment immunity from monetary damages.

## F. RESPONDEAT SUPERIOR

Defendants assert that absent any specific, factual allegations relating to defendants Mckie and Tatarsky, it is clear that they are named in this action "simply because they occupy a supervisory position." (Def. Memorandum, p.10). Defendants assert that it appears plaintiff contends they are responsible for the acts and omissions of other state employees. Thus, defendants contend that all allegations against them should be dismissed as plaintiff's claims may not be premised on the doctrine of respondeat superior.

A review of plaintiff's complaint reveals that he alleges "David Tartarsky is the attorney at the General Counsel office (SCDC). He is legally responsible for legal advice concerning prisoner rights and SCDC policies." (Complaint). As to defendant McKie, plaintiff states that he "is the Warden of Kirkland Correctional Institution in Columbia, SC. His responsibility is for all operations to be done accordingly for staff members, inmates, etc." (Complaint). As to defendant Hill, plaintiff alleges that she is the "Inmate Grievance Coordinator at Kirkland Correctional Institution. She's responsible for the filing of inmate's grievances." (Complaint).

Under the doctrine of respondeat superior, an employer or supervisor is not liable for the acts of their employees, absent an official policy or custom which results in illegal action. See Monell v. Department of Social Services, 436 U.S. 658, 694 (1978) and Fisher v. Washington Metro Area Transit Authority, 690 F. 2d 1133, 1142-43 (4th Cir. 1982). The employer or supervisor may only be held liable if the plaintiff can show that they had actual

11

knowledge of the specific danger, but were deliberately indifferent to the plaintiff's needs despite their knowledge of this danger, Slakan v. Porter, 737 F. 2d 368 (4th Cir. 1984).

Defendants McKie and Tatarsky cannot be held liable under a respondeat superior theory under Title 42, U.S.C. § 1983 for the acts of a subordinate employee. Monell, supra. Additionally, there is no evidence that these defendants were personally involved in the allegations as alleged. Thus, it is recommended that all allegations pertaining to holding defendants responsible for the actions of their employees be dismissed on this theory.

### G. GRIEVANCE PROCEDURE

Plaintiff has made allegations regarding the grievance procedure at KCI. Plaintiff appears to allege that his grievances were not handled properly even though he appealed the decision which was denied and filed a complaint with the ALJ which was dismissed.

It is recommended that these allegations be dismissed as there is no constitutional right to participate in grievance proceedings. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994).

### H. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the

pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## I. INJUNCTIVE/DECLARATORY RELIEF

On October 9, 2008, plaintiff filed a motion entitled "Requesting to cause for a injunction, money damages, and declaratory judgment." (Doc. #12). In this motion, plaintiff states as follows, quoted verbatim in full:

> Plaintiff herein advise the court to apply the following: money damages, injunction; and declaratory judgment within Defendants of this civil action No. 4:08-3113 HMM-TER."

(Doc. #12).

Plaintiff requested injunctive relief but failed to allege what type of injunctive relief he is seeking, what he is seeking that defendants be enjoined from doing, or that he is under imminent threat of harm. Therefore, it is recommended that this motion for injunctive/declaratory (doc.#12) be denied.

## III.  CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983.  It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document # 31) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that the motion for injunctive/declaratory relief be denied and any other outstanding motions be deemed MOOT.[2]

                                            Respectfully Submitted,

                                            s/Thomas E. Rogers, III
                                            Thomas E. Rogers, III
                                            United States Magistrate Judge

May 20, 2009
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[2] On February 3, 2009, plaintiff filed a one paragraph document stating that he was advising the court that he wanted to have all defendants sued in their individual and official capacities. (Doc.#28). Defendants filed their motion for summary judgment on February 10, 2009, and argued both Eleventh Amendment and qualified immunity as to defendants in their official and individual capacities, and it was addressed in this report and recommendation. On March 18, 2009, plaintiff filed a document entitled "Notice of Supplemental Complaint" in which plaintiff basically restates the allegations in his original complaint but requests a specific amount of damages. (Doc. #38). Based on this report and recommendation, it is not necessary to address these documents/motion.